UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MATTHEW A., ) | |
| ) | |
| Plaintiff, ) | No. 19 cv 7070 |
| ) | |
| v. ) | Magistrate Judge Susan E. Cox |
| ) | |
| ANDREW M. SAUL, Commissioner of the ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Matthew A.[1] ("Plaintiff") appeals the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his disability benefits under Title II of the Social Security Act. Plaintiff has filed a motion for summary judgment, which is fully briefed and ripe for disposition. As detailed below, Plaintiff's motion for summary judgment [dkt. 12] is GRANTED; the ALJ's decision is reversed and remanded for proceedings consistent with this Memorandum Opinion and Order.

**I.   Background**

   **a.   Procedural History**

In July 2016, Plaintiff applied for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423(d). [Administrative Record ("R.") 21.] After his application was denied initially and on reconsideration, Plaintiff requested an administrative hearing. [R. 157.] In July 2018, Plaintiff appeared with counsel and testified at a hearing before Administrative Law Judge ("ALJ") David Bruce. [R. 100-29.] A vocational expert also testified. *Id.* On September 27, 2018, the ALJ determined that Plaintiff was not disabled. [R. 21-30.] The Appeals Council subsequently denied

---

[1]   In accordance with Internal Operating Procedure 22, the Court refers to Plaintiff only by his first name and the first initial of his last name(s).

1

Plaintiff's request for review on August 30, 2019, making the ALJ's decision the final decision of the Commissioner. [R. 1-4.] Plaintiff then filed suit pursuant to 42 U.S.C. §§ 405(g).

### b. Relevant Medical Background

Plaintiff was born in June 1977 and was 32 years old on his alleged disability onset date. On March 29, 2010, Plaintiff was injured during an altercation at work, causing back pain that radiated down his left leg. [R. 734.] The next day, he presented to the emergency room and was diagnosed with acute low back pain/sciatica and muscle spasm. *Id.* Plaintiff was prescribed Naprosyn, Flexeril, and Norco and was restricted from bending, twisting, squatting, kneeling, and climbing. *Id.*

Plaintiff subsequently underwent a series of imaging and diagnostic tests due to continued back pain. In February 2011, a CT of the lumbar spine showed a radial tear extending directly posteriorly into the annulus resulting in a grade 2/3 tear at L4-L5 and a complex radial tear extending to the posterior annulus resulting in a grade 3 tear at L5-S1. [R. 344.] A May 2011 EMG/NCS of the bilateral lower extremities also revealed a mild subacute to chronic L4-L5 root irritation on the left side. *Id.* Additionally, MRI results from January 2014 showed a diffuse disc bulge with a posterior annular tear at L4-L5, along with left paracentral disc herniation at L5-S1. [R. 692.] Plaintiff has been diagnosed with thoracic disc displacement, thoracic spinal stenosis, lumbosacral spondylosis with radiculopathy, and lumbar disc displacement. [R. 775.]

To manage his pain and improve functioning, Plaintiff received several injections, attempted physical therapy, and was prescribed multiple medications. Records indicate Plaintiff received a transforaminal epidural steroid injection at L4-5 in July 2010 [R. 666.]; a thoracic epidural steroid injection at T8-9 in September 2010 [R. 661.]; a transforaminal epidural steroid injection at L5-S1 in February 2014 [R. 642.]; trigger point injections to his thoracic paraspinals, lumbar paraspinal, and rhomboids in June 2014 [R. 623.]; and trigger point injections to his thoracic paraspinals, infraspinatus, and rhomboids in July 2014. [R. 620.] Additionally, Plaintiff underwent physical therapy several times

between his alleged onset date and June 2015, and again in March 2018. [R. 112, 1050-55.] At various points, he has also been prescribed Naprosyn, Flexeril, Norco, Gabapentin, Zanaflex, Hydrocodone, Baclofen, Clonazepam, Buspar, Diclofenac, Tapentadol, Meloxicam, Ultram ER, and MS Contin. [R. 317, 340, 360, 664, 666, 675, 734, 800, 822.]

In June 2016, treating physician Dr. Thomas McNally, M.D., completed a chronic pain residual functional capacity ("RFC")[2] questionnaire. [R. 768-70.] In the assessment, Dr. McNally noted that his treating relationship with Plaintiff extended from 2011 to 2016 and that he had diagnosed Plaintiff with lumbar disc displacement, discogenic low back pain, and lumbar radiculopathy. [R. 769.] He also opined that Plaintiff could walk only a quarter of a city block without rest or severe pain, could sit or stand only 10-15 minutes at one time, and could sit, stand, or walk less than 2 hours each in an 8-hour workday. [R. 768.] Additionally, Dr. McNally contended Plaintiff would need 2 to 3 unscheduled breaks each workday and would be absent from work more than 4 days per month. [R. 768-70.] Ultimately, Dr. McNally found Plaintiff "incapable of [performing] even 'low stress' jobs." [R. 768.]

    **c.**    **The ALJ's Decision**

On September 27, 2018, the ALJ issued a written decision denying Plaintiff disability benefits. [R. 21-30.] At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of March 29, 2010. [R. 23.] At Step Two, the ALJ determined that Plaintiff had the severe impairment of degenerative disc disease back and spinal disorders. *Id.* At Step Three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments of 20 C.F.R. Part 404, Subpart P, App'x 1. *Id.* Before Step Four, the ALJ determined that Plaintiff had the residual functional capacity to perform light work, with the following additional limitations: only occasionally balancing, stooping, kneeling, crouching, or crawling; only frequently climbing ramps and stairs; and no climbing of ladders,

---

[2]    RFC is defined as the most one can do despite one's impairments. 20 C.F.R. §§ 404.1545, 416.945.

ropes, or scaffolding. [R. 24.]

At Step Four, the ALJ found that Plaintiff was not capable of performing his past relevant work as a journeyman iron worker. [R. 28.] At Step Five, based on the VE's testimony, the ALJ made alternative findings of other occupations Plaintiff was capable of performing in light of his age, education, work experience, and RFC. *Id.* Specifically, the ALJ determined that Plaintiff could perform the jobs of office helper (DOT #239.567-010), information clerk (DOT #237.367-018), and mail sorter (DOT #209.687-026), which the ALJ found existed in significant numbers in the national economy. [R. 29.] The ALJ also determined that the VE's testimony was consistent with the Dictionary of Occupational Titles. *Id.* Because of these determinations, the ALJ found Plaintiff not disabled under the Act. *Id.*

## II. Social Security Regulations and Standard of Review

The Social Security Act requires all applicants to prove they are disabled as of their date last insured to be eligible for disability insurance benefits. ALJs are required to follow a sequential five-step test to assess whether a claimant is legally disabled. The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; and (3) whether the severe impairment meets or equals one considered conclusively disabling such that the claimant is impeded from performing basic work-related activities. 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920(a)(4)(i)-(v). If the impairment(s) does meet or equal this standard, the inquiry is over and the claimant is disabled. 20 C.F.R. § 416.920(a)(4). If not, the evaluation continues and the ALJ must determine (4) whether the claimant is capable of performing his past relevant work. *Cannon v. Harris*, 651 F.2d 513, 517 (7th Cir. 1981). If not, the ALJ must (5) consider the claimant's age, education, and prior work experience and evaluate whether she is able to engage in another type of work existing in a significant number of jobs in the national economy. *Id.* At the fourth and fifth steps of the inquiry, the ALJ is required to evaluate the claimant's RFC in calculating which work-

4

related activities she is capable of performing given his limitations. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). In the final step, the burden shifts to the Commissioner to show that there are jobs that the claimant is able to perform, in which case a finding of not disabled is due. *Smith v. Schweiker*, 735 F.2d 267, 270 (7th Cir. 1984).

In disability insurance benefits cases, a court's scope of review is limited to deciding whether the final decision of the Commissioner of Social Security is based upon substantial evidence and the proper legal criteria. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004). Substantial evidence exists when a "reasonable mind might accept [the evidence] as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). While reviewing a commissioner's decision, the Court may not "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Young*, 362 F.3d at 1001. Although the Court reviews the ALJ's decision deferentially, the ALJ must nevertheless "build an accurate and logical bridge" between the evidence and his conclusion. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (internal citation omitted). The Court cannot let the Commissioner's decision stand if the decision lacks sufficient evidentiary support, an adequate discussion of the issues, or is undermined by legal error. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *see also*, 42 U.S.C.§ 405(g).

### III. Discussion

Among other claims, Plaintiff asserts the ALJ erroneously rejected the opinions of Plaintiff's treating physician, Dr. Thomas McNally. The Court agrees.

When considering a disability claim, the Social Security Administration directs ALJs to evaluate every medical opinion in the record. 20 C.F.R. § 416.927(c). In doing so, the ALJ must provide "good reasons" for the weight given to a treating source's medical opinion. *See Collins v. Astrue*, 324 F. App'x 516, 520 (7th Cir. 2009); 20 C.F.R. § 416.927(c)(2) ("We will always give good reasons in

5

our…decisions for the weight we give your treating source's opinion."). If the treating source's opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, it is entitled to controlling weight. 20 C.F.R. § 416.927(c)(2). However, should the ALJ decide for "good reasons" not to give controlling weight to an opinion, the ALJ must evaluate what weight to assign to it in accordance with the following factors: (1) the length of treatment; (2) the nature and extent of the treatment relationship; (3) the supportability of the medical opinion; (4) the consistency of the opinion with the record as a whole; (5) the physician's degree of specialization; and (6) other factors supporting or contradicting the opinion. 20 C.F.R. § 404.1527(c); *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008). In his decision, the ALJ must "make[] clear that he was aware of and considered" the aforementioned factors. *Schreiber v. Colvin*, 519 F. App'x 951, 959 (7th Cir. 2013).

Here, the Court does not believe the ALJ articulated "good reasons" for not giving controlling weight to Dr. McNally's opinion. Even if there were sound reasons for refusing to give the opinion controlling weight, the ALJ still erred by assigning it little weight without considering relevant regulatory factors under 20 C.F.R. § 404.1527(c) (*i.e.*, length, nature, and extent of treatment relationship; opinion's consistency with other evidence; explanatory support for the opinion; and any specialty of the treating physician). 20 C.F.R. § 404.1527(c); *Gerstner v. Berryhill*, 879 F.3d 257, 263 (7th Cir. 2018); *See Kimberly L. W. v. Berryhill*, 2019 WL 354980, at *5 (N.D. Ill. Jan. 29, 2019) ("This Court takes the view that an explicit analysis of the checklist is required under the treating physician's rule."). Instead of considering each factor in turn, the ALJ summarily concluded that Dr. McNally's opinion was "inconsistent with the severity of the claimant's impairments." [R. 28.] Specifically, the ALJ reasoned that Plaintiff's "MRIs were rather mild and did not show severe spinal stenosis or nerve root compression" and "[h]is EMG findings all were rather mild." *Id.* However, these reasons fail to pass muster under 20 C.F.R. § 404.1527(c), as discussed below.

First, the ALJ neglected to fully consider the length, nature, and extent of the treatment relationship between Plaintiff and Dr. McNally, as required by 20 C.F.R. § 404.1527(c)(2)(i-ii). In his analysis, the ALJ merely wrote:

> Even though [Dr. McNally] rendered this opinion in 2016, [Dr. McNally] noted that his treating relationship with the claimant had been since 2011.

[R. 28.] In doing so, the ALJ failed to explain how the five-year treatment relationship factored into his analysis or whether the length of the relationship weighed in favor of Dr. McNally's opinion. *See Kimberly L. W.*, 2019 WL 354980, at *6 (finding error when the ALJ failed to "discuss the long treatment relationship" between claimant and treating physician, which "weighs in [the treating physician's] favor"). Notably, the record includes Dr. McNally's treatment notes over several appointments at Suburban Orthopaedics from 2011, 2013, and 2016, along with notes from other appointments at Suburban Orthopaedics and referrals by Dr. McNally. [R. 342, 354, 359, 750, 780, 787, 799, 806, 812, 818, 824, 836.]; *see also* 20 C.F.R. § 404.1527(c)(2)(i) ("Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion."). The ALJ, however, failed to discuss the nature of those appointments or the general extent of Dr. McNally's treatment relationship with Plaintiff. While the ALJ acknowledged the start date of Dr. McNally's treatment, he provided no indication of how (or whether) he weighed that fact in his analysis. *Wallace v. Colvin*, 193 F. Supp. 3d 939, 947 (N.D. Ill. 2016) (finding that an ALJ's failure to "explicitly apply the checklist" [from 20 C.F.R. § 404.1527(c)] is a ground for remand). Based on the ALJ's brief explanation, the Court cannot determine whether the ALJ sufficiently evaluated the aforementioned factors relating to the treatment relationship, preventing meaningful review of the ALJ's decision.

Next, the ALJ inadequately addressed the supportability of Dr. McNally's medical opinion and its consistency with the record as a whole. 20 C.F.R. § 404.1527(c)(3-4). In his treatment notes, Dr. McNally opined that Plaintiff's work injury aggravated his pre-existing but previously asymptomatic

7

"degenerative thoracic and lumbar spinal conditions," causing them to become symptomatic. [R. 345, 753-54.] Dr. McNally then detailed the "degenerative cascade" of Plaintiff's lumbar disc issues, noting that his condition is "chronic" and "permanent." [R. 345, 754.] Further, Dr. McNally cited imaging results supporting his assessment, including a grade 2/3 tear at L4-5 and a grade 3 tear at L5-S1. [R. 344, 753.] Other records also contained diagnoses of thoracic disc displacement, thoracic spinal stenosis, lumbosacral spondylosis with radiculopathy, and lumbar disc displacement. [R. 775.] However, the ALJ impermissibly ignored these diagnoses and instead cherry-picked from the record, selecting imaging results most consistent with a finding of non-disability. [*e.g.*, R. 344-45, 348, 351-52, 673-74, 714, 753-54, 758-59, 775, 781, 900-01.]; *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011) ("The ALJ was not permitted to 'cherry-pick' from . . . mixed results to support a denial of benefits."). While some diagnostic tests did indicate mild results, as the ALJ noted, other imaging and treatment records supported Dr. McNally's opinion and should have been considered in the analysis. [*e.g.*, R. 350-52, 354, 357-58, 585, 641, 753-54.]; *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010) ("An ALJ may not selectively discuss portions of a physician's report that support a finding of non-disability while ignoring other portions that suggest a disability."). On remand, the ALJ should conduct a more thorough evaluation of the supportability of Dr. McNally's opinion and its consistency with the record as a whole. *Scalzo v. Berryhill*, 2018 WL 2021227, at *2 (N.D. Ill. May 1, 2018) ("[T]he ALJ is required to consider the record as a whole, not simply the portions of the record that support [his] opinion.").

Additionally, the ALJ failed to analyze Dr. McNally's degree of specialization, which is noted to be orthopedic surgery and treatment. 20 C.F.R. § 404.1527(c)(5). The Social Security Administration "generally give[s] more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist." 20 C.F.R. § 404.1527(c)(5). Here, Dr. McNally's medical opinion regarding Plaintiff's back issues fit squarely within his area of expertise, rendering the ALJ's omission particularly glaring. *Michelle S. v. Berryhill*,

8

2019 WL 2225994, at *6 (N.D. Ill. May 23, 2019) (finding error when the ALJ "did not discuss the treating physician's specialization," which is "required by the regulations"). As this factor may weigh in favor of crediting Dr. McNally's opinion, the ALJ should have noted Dr. McNally's specialization instead of cherry-picking from the record by failing to mention this. *Edmonson v. Colvin*, 2016 WL 946973, at *7 (N.D. Ill. Mar. 14, 2016) (finding that the ALJ's failure to discuss treating physician's specialization "raises the specter of cherry-picking"). On remand, the ALJ should evaluate whether Dr. McNally's specialization warranted allocating greater weight to his opinion.

Given the nature of Dr. McNally's opinion, the ALJ's failure to follow the treating physician rule cannot be deemed harmless error. As noted above, Dr. McNally opined that Plaintiff could sit or stand for only 10 to 15 minutes at a time and would be absent from work more than 4 days per month. [R. 768, 770.] At the hearing, the VE testified that an individual in Plaintiff's circumstances could not perform work at the sedentary exertional level if he needed to stand after every 30 minutes of sitting. [R. 125-26.] The VE also noted that an employee cannot be absent from work 2 days per month or more. [R. 127.] Thus, according to the VE's testimony, Plaintiff would be precluded from working if credence were given to the absence-related portion of Dr. McNally's opinion (notably, there is nothing in the ALJ's analysis discounting this aspect of the opinion). As a result, the weight afforded to Dr. McNally's assessment could well be outcome determinative in Plaintiff's case.

**IV. Conclusion**

For the foregoing reasons, the Court must reverse and remand for proceedings consistent with this Memorandum Opinion and Order. At this time, the Court offers no opinion as to the other alleged bases of error in the ALJ's decision as raised by Plaintiff. Plaintiff's motion for summary judgment [dkt. 12] is GRANTED.

Entered: 8/18/2020

Susan E. Cox,
United States Magistrate Judge

9